## ANDREWS v. HOOPER.

No. 19097. Opinion Filed Sept. 10, 1929.

Garrett & Jeter, for plaintiff in error.

Keaton, Wells, Johnston & Barnes and Percy Powers, for defendant in error.

FOSTER, C. The defendant in error, Mrs. S. J. Hooper, in 1909 married one J. B. Crawford in Kentucky, and soon thereafter they moved to Oklahoma, and after living in Greer county for about six months, he deserted her and apparently returned to Kentucky and then went to Missouri. Having received a letter from Crawford's mother that he was dead, and also receiving some other more indefinite information to the same effect, she married W. D. Hooper in 1912. and they lived openly as man and wife for about 15 years until his death on February 13, 1926. Two children were born of this marriage, ages 9 and 12, at the time of this trial.

On March 1, 1926, Mrs. Hooper filed a petition in the county court of Greer county asking that one H. C. Ford be appointed as administrator of the estate of W. D. Hooper. Hearing was set for March 15th and notice given, on which date H. C. Ford was appointed administrator. The petition alleged that Mrs. Hooper was the widow of W. D. Hooper and asked the appointment of Ford. Because of some alleged misrepresentations, Mrs. Hooper on March 20th filed a petition to discharge Ford and have herself appointed, and on April 14, 1926, a hearing was had and she was appointed and Ford removed.

On June 22nd, Mrs. Andrews, plaintiff in error, one of the children of W. D. Hooper of a previous marriage, filed a petition asking that she be appointed administratrix of the estate, alleging that no proper notices had been given and that Mrs. Hooper was not a proper and fit person, and that she at the time of her marriage to Hooper had, and still has, another husband, J. B. Crawford, living, from whom she had never been divorced. A demurrer was sustained by the county court to this petition, but on appeal to the district court the ruling was reversed and the cause sent back to the county court, where a hearing was had on the 29th of November, 1926, on the merits. Judgment was in favor of Mrs. Hooper, and on appeal the cause was tried in the district court in July, 1927. That court sustained a demurrer to the evidence of Mrs. Andrews, and from that order this appeal is perfected.

The only question presented is whether the district court erred in refusing to set aside the appointment of Mrs. Hooper and appointing Mrs. Andrews or her brother, another child of the deceased, who was present at the trial, as administrator of the estate.

The record discloses that at the hearing on March 15th, when Ford was appointed upon the petition of Mrs. Hooper as widow of the deceased, due and proper notice was given to all the heirs as required by law and no protest was filed. When Ford was removed and Mrs. Hooper appointed on April 14th, actual notice was given only to Ford. On the petition of Mrs. Andrews, notice was given as required in an original appointment of an administrator.

At the trial in the district court, it appears that Mrs. Hooper, after being deserted by J. B. Crawford, filed a petition for divorce against him before marrying Hooper. but after receiving the letter from Crawford's mother of his death, and some other information to the same effect from rather indefinite sources, she dismissed or dropped the divorce action because, as she said, there "was no use in getting a divorce from a dead man." Before her marriage to Hooper, she informed him of the exact situation. showing him the letter from Crawford's mother.

The deposition of J. B. Crawford was offered and refused by the trial court on the ground that the witness claimed to be the husband of Mrs. Hooper, being in violation of section 589, Comp. Stat. 1921, prohibit-

ing a husband from testifying against his wife. The deposition appears in the record, and he testified that he was married to Mrs. Hooper and had never been divorced and was living in Missouri. Mrs. Hooper says after his desertion she never heard from Crawford, except the information that he was dead, until the filing of this deposition a short time before the trial.

Plaintiff in error bases her whole argument on the proposition that Mrs. Hooper was not legally qualified to enter into the marriage relation, and by doing so could not become the legal widow of deceased so as to entitled her to be appointed administratrix of his estate, especially when her husband is living and undivorced.

At the trial there was some question about proper notice not being served, and also some evidence as to Mrs. Hooper's ability to handle the affairs of the estate, but no such questions are properly presented here.

We have carefully examined the record and briefs filed herein, and are of the opinion that the district court did not err in sustaining the demurrer to the evidence.

Plaintiff in error first contends that the court erred in excluding evidence of J. B. Crawford. This, we think, is immaterial. By excluding this deposition, the court in effect held that Crawford was still living and undivorced from Mrs. Hooper. This is all the deposition would have proved had it been admitted.

Section 1141, Comp. Stat. 1921, provides as follows:

"Administration of the estate of a person dying intestate must be granted to some one or more of the persons hereinafter mentioned, and they are respectively entitled thereto in the following order:

"First. The surviving husband or wife, or some competent person whom he or she may request to have appointed.

"Second. The children. * * *

"Ninth. Any person legally competent."

It may be admitted that, under this section, if deceased had no wife at the time of his death and application had been made at the time Ford was appointed, Mrs. Andrews, or her brother, whom she asked to be appointed at the hearing, would have been entitled to be appointed, provided they were otherwise competent.

Plaintiff in error first cites Newman's Estate (Cal.) 57 Pac. 686. The first, second and fourth paragraphs of the syllabus are as follows:

'After decedent's marriage in New Hampshire, he moved to California, corresponding with his wife and sending her money. While he was in California, his wife married and lived with her second husband for 15 years until his death, a child being born as the result of this marriage. She was awarded letters of administration on his estate, and a decree entered adjudging her to be his widow.' Subsequently she resumed her correspondence with her first husband, informing him of her conduct, and on his death made application for letters of administration on his estate in California. Held, that her conduct did not deprive her of the right to such letters.

"A decree of the probate court declaring a person to be the widow of a decedent is not conclusive as to such question, so as to bar her rights as widow of another, to administer his estate.

"That a wife has been unfaithful and violated her marital obligation does not disqualify her to act as administratrix of her husband's estate."

That case is not in point. The court held she was still the wife of the man in California, but the second marriage was entered into in bad faith, knowing her legal husband was not dead and undivorced. Here, the second marriage was in good faith, honestly believing that all disability had been removed by the death of her first husband. In the instant case, the estate of the man of her second marriage is involved.

Clark v. Barney, 24 Okla. 455, 103 Pac. 598, is next cited. Here one Barney left his first wife in Kansas, came to Oklahoma and married a second time, he and his second wife knowing that the first wife was living and undivorced. After several years, the Kansas wife died, and he continued to live with his second wife. The court held that, while common-law marriages are recognized, the second marriage being entered into with knowledge of disability, the relation was bigamous, licentious, and adulterous in its inception; could not ripen into a common-law marriage after removal of the impediment by continued cohabitation without any change in the relationship. But that case points out that under such circumstances, where the second marriage is entered into in good faith, a continued cohabitation without change, after removal of impediment, will ripen into a common-law marriage. To the same effect, see Mudd v. Perry, 108 Okla. 168, 235 Pac. 479; Stuart v. Schoonover, 104 Okla. 28, 229 Pac. 812. The holding in Clark v. Barney, in our opinion, has no application here.

Our attention is called to section 1862,

Comp. Stat. 1921, defining bigamy and providing an exception where one spouse has been absent for five years without being known to the other spouse to be living. If this statute has any force, it favors the defendant in error. She married in good faith before the five-year period, but continued to cohabit with the second husband for some 12 years after the five years expired. Crawford had been absent for 15 years without being known to her to be living, but, in addition, she had direct information from his mother that he was dead.

It has been held that second marriage after five years' absence of first spouse is not void, but voidable, and must be set aside by order of the court, under a statute to that effect. In re Harrington's Estate (Cal.) 73 Pac. 1000.

We have no such statute, but it has been held that a man is presumed to be dead after an absence of seven years. Modern Woodmen of America v. Michelin, 101 Okla. 217, 225 Pac. 163. However, a more diligent inquiry concerning the missing person is perhaps required than is shown here, to raise the presumption. But Mrs. Hooper had definite information as to his death which would relieve her of the same inquiry otherwise required. Under this rule, a marriage after seven years would be voidable only. She married before the seven years, in good faith, but continued to cohabit with Hooper without any change in relationship after the expiration of seven years.

It is not necessary to so decide, but if it were, this court could logically hold that after seven years there would be a common-law marriage, not void, but voidable only, on decree of a competent court.

This court has always been very liberal in the construction of marriage laws where same are entered into in good faith. Regardless of statute, common-law marriages have been upheld, marriages of persons under age have been held voidable, not void, and marriages in good faith, while under disability, have been held to ripen into legitimate relations when impediments are removed. Good faith, while not controlling, is always one of the principal elements to be considered.

Just what it takes to constitute a wife under section 1141, supra, has never been decided by our court. Mrs. Hooper was the mother of two children. They were the legitimate children and heirs of the deceased. She had a vital interest in the estate on their account, if not her own.

Assuming, without deciding, that Mrs. Hooper was not the wife of the deceased, she made application as widow for appointment of Ford under section 1141, supra. No protest was filed. Later, because of misrepresentations to her, the court removed Ford and she was appointed.

A failure to appear after notice amounts to a waiver of the right to be appointed as administrator. When a waiver is made by those first entitled, the court may appoint the next person as provided by statute. He appointed Ford without protest. Later, without any protest being filed, he appointed Mrs. Hooper. She is not shown to be disqualified under section 1145, Comp. Stat. 1921, to act as administratrix.

Without deciding whether any one of the circumstances above enumerated, standing alone, would have been sufficient, we are of the opinion that under the facts in this case, taken as a whole, the judgment of the district court should be sustained, and it is so ordered.

BENNETT, TEEHEE, HERR, and REID, Commissioners, concur.

By the Court: It is so ordered.