**Harold HILL, Plaintiff in Error,**

v.

**S. C. SHREVE, Defendant in Error.**

**No. 43072.**

Supreme Court of Oklahoma.

Dec. 23, 1968.

Bishop & Wantland, Seminole, for plaintiff in error.

Dick Bell and Frank Seay, Seminole, S. W. Biggers, Wewoka, for defendant in error.

BERRY, Justice.

Defendant in error, S. C. Shreve, as surviving husband, sought to obtain appointment as administrator of the estate of Nell

Hill Shreve, deceased. Harold E. Hill, the only child of Nell Shreve, brought this appeal from an adverse judgment which adjudicated the existence of a common-law marriage between the defendant in error and the decedent.

Decedent married Roy Hill prior to the year 1928. One male child was born of that union who is plaintiff in error here. Roy Hill left his home in 1928 and, insofar as the record shows, was not seen thereafter by any witness testifying, except the plaintiff in error who visited his father in Yates Center, Kansas, some time between 1930 and 1935. However, plaintiff in error testified without objection, he had been told probably in 1944 by a relative since deceased, that his father was alive and well in Ottumwa, Iowa.

The decedent and Shreve established a mutually satisfactory relationship and commenced to reside together. Shreve testified this relationship commenced in 1927. Thus the meretricious nature of the liaison in the beginning is hardly to be gainsaid. Roy Hill was living at that time. The evidence is uncontroverted that Shreve and decedent maintained their relationship thereafter, except for an interval between 1940 and 1945 when Shreve was employed in a Houston shipyard. There is no evidence of domestic strife between them during such separation, and it does appear from the testimony of Shreve that he regularly sent money to his "wife" during this interlude.

Testimony by many witnesses was introduced based on knowledge of, acquaintance with, or friendship with decedent and Shreve. Decedent was addressed by those who knew her as Nell Hill and as Nell Shreve. Insofar as the record shows, decedent was totally indifferent concerning the name used and responded to salutations by either name. The choice seemed to have lain with the person communicating with her. She owned property in the name of Nell Hill, and voted as Nell Shreve. Decedent entered into transactions with tradesmen as Nell Hill, Nell Hill Shreve, and Nell Shreve, and paid honest debts without distinction concerning the name under which bills and invoices were sent. This pattern of behavior by the decedent was consistent over a period in excess of 30 years.

Decedent made and executed two wills which were offered in evidence, not for probate, but as proof decedent did not regard herself and Shreve as husband and wife. These instruments were dated respectively in 1942 and 1962. They were executed by decedent under the name of Nell B. Hill. In each of these testamentary documents decedent referred to Shreve by name as Stephen Curtis Shreve, and as "my good friend and companion", and not as her husband.

If by the conduct of the parties a common-law marriage was accomplished, that marital relationship would, of course, survive any unilateral declaration by either party inconsistent with the common-law marriage. Conduct subsequent to a unilateral declaration inconsistent with a common-law marriage scarcely could be held to impede subsequent accomplishment of a common-law marital status. That status, once accomplished, of course, would persist until divorce or death of one party to the common-law marriage.

The rigorousness of the early decision by this court in Clark v. Barney, 24 Okl. 455, 103 P. 598, has since been mollified by later decisions in more modern and changed times. In Clark, supra, a man having a living wife commenced to live with a former wife in September 1891. This cohabiting couple had a marriage ceremony performed on August 22, 1894, while the man had a living wife. The living, legitimately married wife died on October 14, 1894. The cohabiting couple, with knowledge of the death, continued to live together until his death October 15, 1900. The court held there was no common-law marriage because the ceremony was not conducted in good faith.

The history of the subsequent development of case law is given in Oling-

house v. Olinghouse, Okl., 265 P.2d 711. Olinghouse, supra, is cited with approval in an opinion promulgated shortly thereafter in Early v. Trigg Drilling Co., Okl., 269 P.2d 976, and also cited as authoritative in Parkhill Trucking Co. v. Row, Okl., 383 P.2d 203. The rule stated in Olinghouse, supra, is that the acts of living together and holding themselves out as husband and wife, after removal of a legal impediment to marriage constitute a common-law marriage, even though both parties knew of the impediment.

For forty years Nell Shreve and Curtis Shreve lived together as man and wife. Roy Hill last was seen by one with whom he would be naturally expected to communicate, no later than 1935. Nell Shreve had said Roy Hill was dead. Whether she knew of his demise or assumed such demise after seven years is immaterial. She continued to conduct herself as, and hold herself out to be, the wife of defendant in error. That she held title to property in her former name and conducted business under as many as three names, is not controlling. The common-law marriage springs from contractual capacity and from her attitude toward Shreve and his attitude toward her over an impressive span of years. The testamentary declarations, which militate against Shreve's position, are persuasive but not controlling. They are totally inconsistent with her way of life for the forty years preceding her death.

If, when Nell Shreve died, Roy Hill were living and had not obtained a divorce her presumption of his death would have collapsed. Neither party, insofar as the record shows, adduced any evidence on that aspect. Relevant to the above, attention is directed to syllabus 2, Norton v. Coffield, Exor., Okl., 357 P.2d 434. There we pointed out the presumption favoring validity of the last marriage, places the burden of showing validity of the first marriage upon the party asserting same. And, even where validity of that marriage is established, the presumption such marriage was dissolved by divorce or death casts the onus of adducing contrary evidence upon the party attacking the last marriage. By a preponderance of the evidence, Nell Shreve was the common-law wife of Stephen Curtis Shreve. The judgment is affirmed.

All Justices concur.