2008 OK CIV APP 66

**Bonnie BROOKS, Petitioner,**

v.

**Jasper SANDERS, as personal representative of Roy Sanders, Seismic Drilling Services, LLC, and/or Osage Drilling Company, American Home Assurance Company, Debbie Sue Sanders and The Workers' Compensation Court, Respondents.**

No. 105,075.

Court of Civil Appeals of Oklahoma, Division No. 4.

April 25, 2008.

Certiorari Denied June 30, 2008.

Approved for Publication by Order of the Supreme Court June 30, 2008.

Joe B. Lucas, Taylor, Lucas, Locke & Corbin, Oklahoma City, OK, for Petitioner.

Jim Filosa, James B. Cassody, McGivern, Gilliard & Curthoys, Tulsa, OK, for Respondents Seismic Drilling Services, LLC; Osage Drilling Company; & American Home Assurance Company.

David A. Christoffel, Law Office of Daniel M. Davis, Oklahoma City, OK, for Respondent Debbie Sue Sanders.

KEITH RAPP, Chief Judge.

¶ 1 The claimant, Bonnie Brooks (Claimant), appeals a decision of the Three Judge Panel of the Workers' Compensation Court in favor of Osage Drilling Company/Seismic Drilling (Employer) and its insurer, American Home Assurance, finding that she was not a surviving spouse of Roy Sanders, deceased.[1]

## BACKGROUND

¶ 2 The parties have not materially disputed the facts pertinent to this appeal. Roy Sanders sustained a work related injury which resulted in his death. Claimant sought benefits as surviving spouse.

¶ 3 Roy Sanders and Debbie Sanders married in a ceremony in 1991. They separated sometime prior to the year 2000. In 2000, Claimant and Roy Sanders established a relationship. Claimant, at least, believed that Roy Sanders had previously been divorced from Debbie Sanders. This relationship continued until Roy Sanders' death and evidenced the attributes of a common-law marriage.[2]

¶ 4 However, Roy and Debbie Sanders did not divorce until a decree was entered on February 14, 2006. On that date, the District Court of LeFlore County entered an Agreed Decree of Dissolution of Marriage between Roy and Debbie Sanders.[3] In part, this Decree recited:

8. The Court further finds, orders, and adjudges that the 90–day waiting period is waived for the reason that both parties have contemplated a peaceful divorce for over eight (8) years and have reached an agreement and signed approval regarding all issues of this divorce.

¶ 5 Roy Sanders was injured on May 3, 2006. He died from his injury on May 13,

1. The employee, Roy Sanders, is deceased. Debbie Sue Sanders, Roy Sanders' former wife, who sided with Employer, also appeared in the proceedings. Jasper Sanders as Personal Representative, appeared but is not involved in the issue on appeal. David A. Christoffel, attorney-at-law, entered an appearance here for Cameron Allen Sanders and Chastity Sanders, minor children of Roy Sanders and Debbie Sanders.

2. Employer, in its Brief, does not seriously contest that the elements of a common law marriage are present and, instead, relies upon the impediment of an existing marriage and 43 O.S.2001, § 123, to defeat the marriage relationship between Claimant and Roy Sanders. The elements are set out in *D.P. Greenwood Trucking Co. v. State Indus. Comm'n*, 1954 OK 165, 271 P.2d 339 (Syl.3). "To constitute a valid 'common-law marriage,' it is necessary that there should be an actual and mutual agreement to enter into a matrimonial relation, permanent and exclusive of all others, between parties capable in law of making such a contract, consummated by their cohabitation as man and wife, or their mutual assumption openly of marital duties and obligations. A mere promise of future marriage, followed by illicit relations, is not, in itself, sufficient to constitute such marriage."

3. Record, p. 23. Debbie Sanders did not make a claim in the Workers' Compensation Court for herself. She and Roy Sanders are the parents of two minor children. Claimant and Roy Sanders are the parents of one child. Workers' compensation benefits were awarded for the children and that award is not in issue.

2006. The trial judge ruled that Roy Sanders and Bonnie Brooks had established a common-law marriage as of the date of his death and that she was his sole surviving spouse. Employer appealed and the Three–Judge Panel reversed that ruling with a finding that Roy Sanders was a single person at the time of his death and no common-law marriage existed between him and Claimant. Claimant appeals.

## STANDARD OF REVIEW

¶ 6 Claimant, in order to obtain benefits, must be the widow of Roy Sanders by virtue of a common-law marriage. The issue here is whether there was an impediment to that marriage relationship by application of 43 O.S.2001, § 123.[4] Whether Claimant is the widow and entitled to maintain her claim, is a jurisdictional question upon which the finding of the Three–Judge Panel is not conclusive on this Court. *D.P. Greenwood Trucking Co.*, 1954 OK 165 at ¶ 4, 271 P.2d at 340–41. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1. Also, matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Keizor v. Sand Springs Ry. Co.*, 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

## ANALYSIS AND REVIEW

¶ 7 Until Roy Sanders obtained his divorce, his marriage to Debbie Sanders constituted a legal impediment to a marriage with Claimant. *Whitney v. Whitney*, 1942 OK 268, 134 P.2d 357 (Syl.1). However, the removal of a legal impediment to marriage, where parties continue to live together, recognizing each other as husband and wife, ripens into a common-law marriage as of the time of the removal of the impediment. *Burdine v. Burdine*, 1952 OK 103, 242 P.2d 148 (Syl.1, 2).

¶ 8 It is undisputed that the six-month period specified in Section 123 had not passed from the date of the Sanders' divorce decree in February 2006, to the date of Roy Sander's death in May 2006. Moreover, the facts clearly show that the elements necessary to establish a common-law marriage existed during this period. Thus, the question is whether Roy Sanders and Claimant became married after the impediment of Roy Sanders' prior marriage was lifted by the divorce, or whether Section 123 established a new, or continuing impediment preventing their relationship from evolving into a common-law marriage until the expiration of six months from the date of the divorce.

¶ 9 Case histories reveal that people become embroiled in the six-month controversy in three ways following a divorce. The first two involve ceremonial rites, either in or out of state.[5] The third case involves the common-law relationship.

¶ 10 In *Plummer v. Davis*, 1934 OK 499, 36 P.2d 938, the Court was presented with the case where the parties had a ceremony less than six months after the divorce and then one of the parties died before the six-

---

4. Section 123 provides:

   It shall be unlawful for either party to an action for divorce whose former husband or wife is living to marry in this state a person other than the divorced spouse within six (6) months from date of decree of divorce granted in this state, or to cohabit with such other person in this state during said period if the marriage took place in another state; and if an appeal be commenced from said decree, it shall be unlawful for either party to such cause to marry any other person and cohabit with such person in this state until the expiration of thirty (30) days from the date on which final judgment shall be rendered pursuant to such appeal. Any person violating the provisions of this section by such marriage shall be deemed guilty of the felony of bigamy. Any person violating the provisions of this section by such cohabitation shall be deemed guilty of the felony of adultery.

   An appeal from a judgment granting or denying a divorce shall be made in the same manner as in any other civil case.

5. Out of state remarriages are not covered by Section 123 as currently written. *Copeland v. Stone*, 1992 OK 154, 842 P.2d 754. Parties do remarry each other during the six-month period without apparent imposition of penalty and often do so by common law as opposed to ceremonial marriage. *Harrison v. Burton*, 1954 OK 332, 303 P.2d 962 (Syl.1).

months period expired.[6] The surviving spouse sought to establish a right to inherit as surviving spouse, which was contested on the basis that the marriage was unlawful under Section 123.

¶ 11 The Court reviewed the history and derivation of Section 123. The Court found that Section 123 came from Kansas where the court there construed the original Kansas statute to make a marriage that violated the six-month rule voidable and not. void. The Kansas Legislature amended the statute to make such marriages void and the Kansas court subsequently altered its construction of the statute accordingly.

¶ 12 Oklahoma's original statute, together with court construction of the statute, made such marriages void. However, in 1925, the Legislature amended Section 123 to remove the language making the marriage void. Thus, the Court, in *Plummer*, ruled that Davis was the surviving spouse, even though his marriage to his deceased wife was entered into less than six months after the date of her divorce from her former husband. The Court held that a remarriage within six months after a divorce is voidable, but not void. *Plummer*, (Syl.1).

¶ 13 The Court also recited the rule that when parties enter into a second marriage in good faith and continue to cohabit as married persons during and beyond the six month period, then the "relationship ripens into a common-law marriage." [7] *Plummer*, 1934 OK 499 at ¶¶ 18–19, 36 P.2d at 942. However, in *Plummer* the parties had proceeded with a ceremony and had not been together for six months before the death of one of them.

¶ 14 In a pre-*Copeland* decision involving an out-of-state remarriage before the six months had passed, the Court in *Wasson v. Carden*, 1979 OK 69, 594 P.2d 1223, noted that the remarriage was only voidable.[8] However, the Court held that such remarriages can ripen into a valid common-law

marriage after the expiration of six months, which was the case there.

¶ 15 The cases of *Earley v. State Industrial Comm'n*, 1954 OK 122, 269 P.2d 977, and *Burdine v. Burdine*, 1952 OK 103, 242 P.2d 148, involved common-law relationships after a divorce, rather than ceremonial marriages. In each case the Court ruled that the removal of a legal impediment to marriage while parties continue to live together as husband and wife gives rise to marriage by common-law as of the time of removal of impediment. Thus, the Court treated the six-month period under Section 123 as an impediment to remarriage. The foregoing cases result in an apparent disparity of treatment between ceremonial remarriages (valid during the six months, but voidable-*Plummer*) and common-law remarriages (only ripen into a valid marriage after six months-*Earley/Burdine*).

¶ 16 In the case of *In re Mo-se-che-he's Estate*, 1940 OK 453, 107 P.2d 999, the issue was whether the deceased's Last Will, executed when she was single, was revoked by a marriage to one Jack Rogers (Husband), who claimed a right to inherit as surviving spouse and asserted that the Will was revoked by marriage. The resolution of the issue turned upon whether their marriage was valid because of Husband's prior marriage.

¶ 17 Husband and one Hattie Davis had a ceremonial marriage in Kansas, but it occurred within six months of her divorce. Husband, within six months of the marriage to Davis, filed for an annulment in Oklahoma and obtained a decree of annulment in March 1934. He and deceased then married in a ceremony in May of 1934, and lived as husband and wife until her demise.

¶ 18 The Will's proponents maintained, on several grounds, that the court that decreed annulment in the Davis marriage had no jurisdiction to do so. The Supreme Court rejected this contention. One of the reasons for the Court's decision was that the district court has the power, in equity, to annul an invalid marriage. Thus, the Court entered

---

6. *See* Paragraphs ¶ 21, ¶ 23 and ¶ 24 regarding *Plummer*.

7. Oklahoma recognizes that there are two forms of marriage, ceremonial and common-law. The latter derives from the early frontier days of this

nation and was first recognized as a legal form of marriage by the State of New York.

8. *See* n. 5.

into a discussion about the status of the Husband–Davis marriage prior to the six-month period having expired.

¶ 19 The Court stated:

It has often been held that where a person marries within six months after procuring a divorce, such marriage may ripen into a valid common-law marriage where the parties continue to live together as man and wife after the expiration of the six-months period. But this is purely because of the conduct of the parties after the expiration of the six months.

The general rule is that such a marriage has no validity whatever during the time within which either party is prohibited by law from marrying any person except the other party to the divorce. This has been the universal holding of this court with the possible exception of *Plummer v. Davis,* 169 Okla. 374, 36 P.2d 938. Therein it is held:

"Where wife remarries and dies within six months from her divorce decree, her second marriage is voidable and not void, and unless the marriage is set aside prior to her death by proper proceeding, her second husband will inherit husband's share."

It is there stated that such marriage is not void, but voidable. It is indicated, however, that such marriage may be set aside by proper proceedings within said six-months period.

*In re Mo-se-che-he's Estate,* 1940 OK 453 at ¶¶ 56–57, 107 P.2d at 1004.

¶ 20 Thus, the Court's ruling was that the district court has jurisdiction to annul a marriage entered into before the six-month period prohibiting marriage to all except the former spouse has expired. Moreover, it is apparent that the Court deemed it immaterial whether the remarriage was voidable or void, and of no validity, during the six-month period. In either case, the trial court had jurisdiction to annul the prohibited marriage and, as a result, whether *Plummer* gave some form of validity to the voidable mar-

riage was also immaterial. Thus, *In re Mo-se-che-he's Estate* does not present an applicable fact situation, such as here, where either the Husband–Davis relationship was fully consistent with a common-law marriage during the six-month period or a determination of the relationship's void-voidable status as a common-law marriage was necessary.

¶ 21 Subsequently, the Court of Civil Appeals in the case of *In re Estate of Rogers,* 1977 OK CIV APP 9, ¶ 11, 569 P.2d 536, 538, expressed the view that *Plummer* was overruled by *In re Mo-se-che-he's Estate.*[9] In *Rogers,* the Court found the Oklahoma rule to be that a voidable marriage has no validity during the six-month limitation period and, if the elements of a common-law marriage are present, the parties' relationship ripens into a marriage after the expiration of the six months.

¶ 22 However, *Rogers* does not assist in resolving the case here. The parties in *Rogers* engaged in a ceremonial remarriage. Just as in *In re Mo-se-che-he's Estate,* the elements here of a common-law marriage were not in place. Consequently, *Rogers* also does not present a fact situation where the parties' relationship satisfied the elements of a common-law marriage during the six-month period.

¶ 23 Subsequent to *Rogers,* a different Division of the Court of Civil Appeals found that the parties' relationship had matured into a common-law marriage by the time one had died. *Dowell v. Welch,* 1978 OK CIV APP 1, 574 P.2d 1089. Thus, the legal status of the parties during the six-month period was immaterial because the limiting period had passed and the relationship had matured into a valid common-law marriage. Nevertheless, the *Dowell* Court, citing *Greenwood* and *Plummer* (but not referencing *Rogers*), stated that the forbidden remarriage was valid and not void. The Opinion characterized the relationship as "perishable" during the six-month period and, after removal of the impediment, the relationship "ripens into a valid common-law marriage." *Dowell,* 1978 OK CIV APP 1 at ¶ 6, 574 P.2d at 1091.

---

9. To the extent that *Rogers* applied Section 123 to an out-of-state remarriage, it is been rejected

by *Copeland.* See n. 5.

¶ 24 In 1979, the Supreme Court cited *Plummer* and *Dowell* (but without reference to *Rogers*) in its Opinion in *Wasson v. Carden*, 1979 OK 69, ¶ 4, 594 P.2d 1223, 1225–26.[10] There, Wasson was divorced and then remarried outside of the State and returned to Oklahoma. His former spouse sought contempt. In ruling that Wasson was not subject to a contempt proceeding, the Court held that the prohibited remarriage was not void, but was voidable. The Court reasoned:

> Oklahoma has consistently held, in *Greenwood v. Greenwood*, 387 P.2d 615 (Okl.1963), and in *Plummer v. Davis*, 169 Okl. 374, 36 P.2d 938 (1934) that remarriage by a divorced person within six months from the date of the divorce is voidable, but not void. It has also been determined in Oklahoma that, even though a marriage is improperly entered into in violation of the statute, it may ripen into a valid marriage at the end of the prohibitory period. In *Dowell v. Welch*, 574 P.2d 1089, 1091 (Okl.App.1978) the Court of Appeals found that: the legitimacy of a marital relationship is perishable during the prohibitory period; the ultimate result is not altered where the parties continue living together after the nuptial inhibition is removed; and the adulterous concubinage ripens into a valid common-law marriage. The petitioner's divorce was granted September 13, 1978. The petitioner remarried November 23, 1978. The marriage has ripened into a valid common-law marriage.

*Id.*

¶ 25 After review of the authorities, this Court holds that there can be no legal, constitutional difference in the treatment of remarriages by ceremony versus remarriages by common law. Close scrutiny of the cases shows that the Supreme Court, as of *Wasson* and when presented an appropriate fact situation, will treat both situations the same by citing to both *Plummer* and *Dowell*.

¶ 26 In summary, this Court recognizes in accordance with established Oklahoma case law that, absent a marital impediment suffered by one of the parties to the common-law marriage, a common-law marriage occurs upon the happening of three events: a declaration by the parties of an intent to marry, cohabitation, and a holding out of themselves to the community of being husband and wife. Further, this Court recognizes that if there exists the same impediment to the marriage of either party as presented by the facts here, then the circumstance might expose the parties to the provisions of 43 O.S.2001 § 123.

¶ 27 This Court holds that if either or both parties undertake to enter into a common-law marriage within a divorce decree's six-month prohibitory marriage period to any except their former spouse, then the marriage is not *per se* void, but voidable until after the six-month prohibitory period. The marriage, after expiration of the prohibitory period, "ripens" or becomes a valid and recognizable common-law marriage only upon the expiration of the prohibitory period or periods.[11]

¶ 28 This Court further holds that the voidable common-law marriage may be terminated at any time during the running of the prohibitory marriage period by any one of the following events: voluntary action by either party or by the death of either party.

### CONCLUSION

¶ 29 Therefore, the Court here holds that, because Roy Sanders died prior to the expiration of the prohibitory period of marriage resulting from his divorce, he could not have entered into a binding marital relationship with any except his former spouse. Accordingly, the attempted common-law marriage was voided by his death and failed. Thus,

---

10. This indicates that the *Rogers* Court was mistaken about whether *In re Mo-se-che-he's Estate* overruled *Plummer*. To the extent that *Wasson* applied Section 123 to an out-of-state remarriage, it has been rejected by *Copeland*. See n. 5

11. The felony created by 42 O.S.2001 § 123 for the marriage of a party to one other than the former spouse is not an attack by the State upon the *res* of the marriage but rather is a penalty by the State directed to the individual for violating the prohibitory period as set out in the statute. Prosecution under this statute does not invalidate the intended common-law marriage, which will ripen into a recognized marriage upon expiration of the prohibited period.

the decision of the workers' compensation court is sustained.

¶30 SUSTAINED.

GABBARD, P.J., and WISEMAN, J. (sitting by designation), concur.